# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 8, 2015           Decided May 8, 2015

No. 14-1056

FALLBROOK HOSPITAL CORPORATION, DOING BUSINESS AS
FALLBROOK HOSPITAL,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

Consolidated with 14-1094

On Petition for Review and Cross-Application for
Enforcement of an Order of the National Labor Relations
Board

*Kaitlin A. Kaseta* argued the cause for petitioner. On the briefs was *Bryan T. Carmody*.

*Barbara A. Sheehy*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Richard F. Griffin*, *Jr.*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Jill A. Griffin*, Supervisory Attorney.

Before: GARLAND, *Chief Judge*, PILLARD, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the court by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: In a decision issued on April 14, 2014, the National Labor Relations Board ("Board") held that Fallbrook Hospital Corporation ("Fallbrook" or "Hospital") had violated Sections 8(a)(1) and (5) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 158(a)(1), (5), by refusing to bargain in good faith with the California Nurses Association/National Nurses Organizing Committee, AFL-CIO ("Union"), after the Union had been certified to represent a bargaining unit of registered nurses working in the Hospital's acute care unit. *See Fallbrook Hosp. Corp.*, 360 N.L.R.B. No. 73 (2014), slip op. at 1–2 & n.2. The Board further held that "an award of negotiating expenses [was] necessary to fully remedy the detrimental impact [that Fallbrook's] unlawful conduct has had on the bargaining process." *Id.* at 2. Fallbrook now petitions for review of the Board's decision ordering it to pay negotiation expenses to the Union. The Board, in turn, cross-petitions for enforcement of its order. We deny Fallbrook's petition and grant the Board's cross-petition.

Far from the run-of-the-mill failure to bargain, the Board specifically found that Fallbrook acted in an "obstinate and pugnacious manner," *id.* at 9, "operated with a closed mind and put up a series of roadblocks designed to thwart and delay bargaining," *id.*, and that the totality of Fallbrook's conduct made it "clear" that "there was no intent to bargain," *id.* at 15. The Board found *multiple* violations of the Act based on Fallbrook's conduct at the bargaining table, including but not limited to refusing to bargain over mandatory subjects and

refusing to provide information requested by the Union. *Id.* at 1 & n.2; *see also id.* at 15.

As the Board's decision makes clear, a reimbursement remedy is appropriate "where it may fairly be said that [an employer's] substantial unfair labor practices have infected the core of a bargaining process to such an extent that their effects cannot be eliminated by the application of traditional remedies." *Id.* at 2 (internal quotation marks omitted) (quoting *Unbelievable, Inc.*, 318 N.L.R.B. 857, 859 (1995), *enf'd in pertinent part*, *Unbelievable, Inc. v. NLRB*, 118 F.3d 795 (D.C. Cir. 1997)). Such a remedy "is warranted both to make the charging party whole for the resources that were wasted because of the unlawful conduct, and to restore the economic strength that is necessary to ensure a return to the status quo ante at the bargaining table." *Unbelievable*, 318 N.L.R.B. at 859.

On May 21, 2014, after the Hospital filed its Petition for Review with this court, Fallbrook gave notice to the Union that it intended to terminate the acute care unit in which members of the bargaining unit worked. In light of this development, "Fallbrook has decided to abandon all issues presented on appeal, except for the Board's award of negotiating expenses." Br. of Petitioner 2 n.2. In other words, the Hospital does not challenge the findings underlying the Board's conclusion that Fallbrook "deliberately acted to prevent any meaningful progress during bargaining" and that it committed a number of serious violations of the Act. *Fallbrook*, 360 N.L.R.B. No. 73, slip op. at 2.

The only question before the court on the petition for review is whether the Board's award of negotiation expenses was a "clear abuse of discretion." *See United Steelworkers of Am. v. NLRB*, 376 F.2d 770, 773 (D.C. Cir. 1967). Fallbrook

argues that the Board's decision is wanting because it fails to take account of the totality of the circumstances and is unsupported by law. We reject this argument. As explained below, the Board's decision that negotiation expenses were warranted in this case is amply supported by substantial evidence in the record and has a rational basis in the law.

Fallbrook has filed a motion to remand the case to the Board pursuant to Section 10(e), 29 U.S.C. § 160(e), for the Board to hear additional evidence. A remand is permissible under Section 10(e) if the movant can demonstrate to the court's satisfaction that any purported new evidence is material and could not reasonably have been raised before the Board. Fallbrook argues that, because the Hospital has effectively terminated the entire bargaining unit by closing its acute care facility, there are "changed factual circumstances" that justify remand to the Board to reconsider its award of negotiating expenses. Fallbrook's theory is that there are two separate purposes for the Board's negotiation expenses remedy: one to redress the effect of Fallbrook's past misconduct on the Union (which Fallbrook does not contest), and one to provide the Union prospective strength at the bargaining table (which Fallbrook claims is now "unnecessary" due to the closure of the Hospital's acute care unit). Fallbrook thus argues that the case should be remanded to the Board to allow it to reconsider whether the disputed remedy is still justified. This argument is not only meritless, it reflects real chutzpah. *See, e.g.*, *Harbor Ins. Co. v. Schnabel Found.*, 946 F.2d 930, 937 n.5 (D.C. Cir. 1991) ("It reminds us of the legal definition of chutzpah: chutzpah is a young man, convicted of murdering his parents, who argues for mercy on the ground that he is an orphan.").

The Board's decision does not, as Fallbrook suggests, apportion the remedy to distinguish between relief for past

misconduct and relief to ensure that the Union has prospective strength in collective bargaining. Rather, the Board's decision states that the purpose for the remedy is to make the Union whole and to put the Union in the same place it was *before* the bargaining ever occurred. Furthermore, the Hospital and the Union held a number of bargaining sessions to negotiate over the effects of the closure of the acute care unit, and these bargaining sessions occurred *after* the Board issued its decision and *after* Fallbrook announced the closure. Therefore, even accepting Fallbrook's theory – that a portion of the Board's order was only intended to give the Union prospective strength at the bargaining table – it is still clear that the Board's remedy is fully justified. In sum, we find no merit in Fallbrook's motion to remand the case to the Board pursuant to Section 10(e).

## I. BACKGROUND

### A. *Statutory and Legal Background*

Section 8(a)(5) of the Act makes it "an unfair labor practice for an employer . . . to refuse to bargain collectively with the representatives of his employees. . . ." 29 U.S.C. § 158(a)(5). As is relevant here, the duty to bargain collectively means, "to meet at reasonable times and confer in good faith with respect to . . . the negotiation of an agreement." *Id.* § 158(d). Because the statutory standard of "good faith" bargaining is determined by the facts of each case, whether or not a party has failed to live up to this duty falls squarely within the province of the Board's expertise. *Sign & Pictorial Union Local 1175 v. NLRB*, 419 F.2d 726, 731 (D.C. Cir. 1969). "A violation of Section 8(a)(5) is also a violation of Section 8(a)(1), which makes it an unfair labor practice for an employer to 'interfere with, restrain, or coerce employees in the exercise' of their statutory right to bargain

collectively through representatives of their own choosing." *S. Nuclear Operating Co. v. NLRB*, 524 F.3d 1350, 1356 n.6 (D.C. Cir. 2008) (quoting 29 U.S.C. § 158(a)(1)).

The Board has discretion to fashion appropriate remedies for violations of the duty to bargain. *See* 29 U.S.C. § 160(c) (authorizing the Board to order the violator "to take such affirmative action . . . as will effectuate the policies of this subchapter"). As noted above, "[i]n cases of unusually aggravated misconduct," the Board may order an offending party "to reimburse the charging party for negotiation expenses." *Unbelievable*, 318 N.L.R.B. at 859. The Board determines whether negotiating expenses are warranted after weighing the evidence in a particular case. *Hosp. of Barstow, Inc.*, 361 N.L.R.B. No. 34 (Aug. 29, 2014), slip op. at 5 n.13. There are no *per se* rules regarding when reimbursement of negotiation expenses will be ordered.

**B.** *The Facts*

It is unnecessary for us to offer a detailed statement of the facts in this case. As noted above, Fallbrook does not contest the Board's findings, which are fully set forth in the Board's decision and in the Statement of the Case issued by the Administrative Law Judge ("ALJ"). *See Fallbrook*, 360 N.L.R.B. No. 73, slip op. at 2, 5–8. The Board's decision notes, in relevant part:

> [T]he Union was certified as the exclusive collective-bargaining representative of the Respondent's nurses on May 24, 2012, and the parties held their first bargaining session on July 3. As found by the judge, the Respondent engaged in bad-faith bargaining from the outset, and this conduct continued until the final bargaining session on January 8, 2013. Thereafter, the Respondent refused to

respond to any of the Union's requests for future bargaining dates. Thus, by its conduct, the Respondent effectively precluded any meaningful bargaining for virtually the entire certification year.

. . . .

As described in detail in the judge's decision, the record shows that the Respondent deliberately acted to prevent any meaningful progress during bargaining sessions that were held. For example, the Respondent's bargaining team failed to provide any proposals or counterproposals during the first eight bargaining sessions until it received a full set of proposals from the Union, left the September 12 bargaining session abruptly and without explanation, and left the October 11 bargaining session 3 minutes after arriving. In addition, although the Respondent proffered some proposals during the next three bargaining sessions, it subsequently threatened that it would not continue bargaining if the Union persisted in encouraging employees' use of the Union's assignment despite objection (ADO) form. At a bargaining session held on January 8, 2013, the Respondent falsely claimed that the nurses' use of the ADO forms caused the parties to be at impasse, refused to bargain further, and left the meeting after about 15 minutes. Thereafter, the Respondent reaffirmed its refusal to bargain when it refused to respond to the Union's requests for future bargaining dates.

*Id.* at 2–3 (footnote omitted). The Board's summary of the facts is amplified by the ALJ's findings, *id.* at 6–8, which were largely adopted by the Board, *id.* at 1. The ALJ found that Fallbrook had engaged in a slew of unfair labor practices, including "failing and refusing to bargain with the Union in

good faith over the terms of a collective-bargaining agreement, failing and refusing to bargain with the Union over the terminations of unit employees Robinson and Sandwell, and failing to furnish relevant information to the Union, in violation of Section 8(a)(1) and (5) of the Act." *Id.* at 15.

In light of these findings, the Board concluded that Fallbrook should be required "to reimburse the Union for the expenses it incurred for the collective-bargaining negotiations held from July 3, 2012, through the final bargaining session on January 8, 2013." *Id.* at 3. On this point, the Board said:

> We find that the Respondent's misconduct infected the core of the bargaining process to such an extent that its effects cannot be eliminated by the mere application of our traditional remedy of an affirmative bargaining order. In these circumstances, requiring the Respondent to reimburse the Union's negotiation expenses is also warranted both to make the [Union] whole for the resources that were wasted because of the [Respondent's] unlawful conduct, and to restore the economic strength that is necessary to ensure a return to the status quo ante at the bargaining table. Such expenses may include, for example, reasonable salaries, travel expenses, and per diems.

*Id.* (citations and internal quotation marks omitted).

Fallbrook now petitions for review of the Board's decision ordering the Hospital to reimburse the Union's negotiation expenses. The Board cross-petitions for enforcement.

## II. ANALYSIS

### A. *Standard of Review*

It is well understood that "the choice of remedies is primarily within the province of the Board." *United Steelworkers*, 376 F.2d at 773. "[T]he breadth of agency discretion is, if anything, at zenith when the action assailed relates primarily not to the issue of ascertaining whether conduct violates the statute, or regulations, but rather to the fashioning of policies, remedies, and sanctions . . . in order to arrive at maximum effectuation of Congressional objectives." *Niagara Mohawk Power Corp. v. Fed. Power Comm'n*, 379 F.2d 153, 159 (D.C. Cir. 1967) (footnote omitted). The Board's order of remedies "should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Virginia Elec. Co. v. NLRB*, 319 U.S. 533, 540 (1943). In other words, there must be "so gross an abuse of power as to be arbitrary." *United Steelworkers*, 376 F.2d at 773. We find no "abuse of power" in the Board's disposition of this case.

### B. *Summary Enforcement of the Board's Findings of Section 8(a)(1) and (5) Violations and Uncontested Remedies*

Because Fallbrook has expressly abandoned its challenge to the Board's determinations that Fallbrook violated Sections 8(a)(1) and (5) by refusing to bargain in good faith, the Board's award of an affirmative bargaining order, one-year extension of the Union's certification period, cease-and-desist order, and notice posting, we summarily enforce the Board's findings and order with respect to those charges and

uncontested remedies. *See Allied Mech. Servs. v. NLRB*, 668 F.3d 758, 765 (D.C. Cir. 2012).

## C. *The Board's Decision Ordering Reimbursement of Negotiation Expenses*

Fallbrook claims that the Board "singled out Fallbrook for the extraordinary remedy based upon three factors: (1) Fallbrook did not make any proposals until the eighth bargaining session by which point the Union had submitted the entirety of its proposals, (2) the short duration of two of the parties' eleven bargaining sessions, and (3) Fallbrook's suspension of negotiations based upon the Union's refusal to cease distribution of the ADO[ Forms]." Br. of Petitioner 14. The Hospital also contends that the Board failed to consider some factors that "demonstrate that Fallbrook did not engage in any 'unusually aggravated misconduct.'" *Id.* Fallbrook points to only two such factors: a claim that the Union and the Hospital had entered into a pre-certification agreement pertaining to certain subjects of bargaining; and a claim that the Hospital was operating under the belief that any dispute between the parties would be submitted to an arbitrator. *See id.* at 15. Fallbrook also disputes that its extensive unfair labor practices amounted to "unusually aggravated conduct." *See id.* at 15–20. We find no merit in these arguments.

Fallbrook's claim that the Board based its order on only "three factors" both mischaracterizes the Board's decision and fails to account for the fact that the Board affirmed and adopted the ALJ's extensive factual findings that "the totality of the conduct indicates [Fallbrook] operated with a closed mind and put up a series of roadblocks designed to thwart and delay bargaining." *Fallbrook*, 360 N.L.R.B. No. 73, slip op. at 9. Moreover, the Board found that it was "clear" that Fallbrook had "no intent to bargain, and [that Fallbrook's]

continued attempts to challenge the Board's certification make it clear it does not welcome the Union." *Id.* at 15. Much more than basing its determination "upon three factors," Br. of Petitioner 14, the Board based its decision on the extensive list of unfair labor practices found by the ALJ and uncontested by the Hospital. Given this litany of misconduct showing Fallbrook's deliberate attempts to prevent any actual bargaining, *see Fallbrook*, 360 N.L.R.B. No. 73, slip op. at 5–9, the Board's chosen remedy is supported by substantial evidence in the record.

Fallbrook's claim that its misconduct did not amount to "unusually aggravated misconduct," *see* Br. of Petitioner 15–20, is belied by the record. Fallbrook has cherry-picked the record and then argued that isolated examples of its misconduct, in and of themselves, do not justify the Board's chosen remedy. For example, Fallbrook argues that the duration of the bargaining sessions does not justify an award of negotiation expenses because "the Board has frequently encountered employers who walk out of bargaining sessions and . . . has not assessed the extraordinary remedy of negotiating expenses." *Id.* 17–18. This argument entirely misses the point. The problem with Fallbrook's approach is obvious: the Board's decision rests on the Hospital's entire record of unfair labor practices, which in this case is quite extensive. The Board found that the *totality* of Fallbrook's misconduct justified the remedy. This is perfectly appropriate under established law. *See Hosp. of Barstow*, 361 N.L.R.B. No. 34, slip op. at 5 n.13 (explaining that "decisions [by the Board] make clear that, in determining whether to award negotiating expenses, [the Board] will consider each case on its own merits, evaluating the effect of the violation on the wronged party and the injury to the collective-bargaining process"). In this case, it cannot be seriously doubted that substantial evidence supports the Board's decision.

Fallbrook further protests that the Board failed to credit the fact that there was a pre-certification agreement between the Union and Fallbrook's parent company. However, the ALJ found that "[t]here is no evidence of record about what happened during these [pre-certification] negotiations other than they resulted in agreement [between the Union and Community Health Systems, the parent company] on certain provisions and [Community Health Systems] was not named as a respondent in this case." *Fallbrook*, 360 N.L.R.B. No. 73, slip op. at 9 n.12. In other words, Fallbrook never executed an agreement with the Union; the pre-certification negotiations involved only the parent company, not Fallbrook. Thus, the ALJ concluded, "[t]hat there may have been good faith negotiations between the Hospital's parent company and the Union at some point in the past does not impact my findings [regarding Fallbrook's unfair labor practices] based on the record before me." *Id.* at 9. The Board adopted these findings and the conclusion.

The Board's decision here is also consistent with its decision in *Harowe Servo Controls, Inc.*, 250 N.L.R.B. 958 (1980). In that case, the Board held:

> That the Respondent can cite *some evidence of agreement on specific issues is therefore of no consequence in the circumstances of this case*. Indeed, these circumstances lead inexorably to the conclusion that such agreement as was reached was no more than the vehicle chosen by the Respondent to conceal a strategy designed to render bargaining futile.

> It is thus evident that the economic resources wasted by the Union in the futile pursuit of a collective-bargaining agreement are a direct and proximate result of the

> Respondent's willful defiance of its statutory obligation. Accordingly, in order to restore the *status quo ante*, we shall require that the Respondent reimburse the Union for the bargaining expenses it incurred during the period here in question.

*Id.* at 965 (emphasis added) (footnote omitted). The same considerations apply here.

Fallbrook moreover argues that "the Board ignored the fact that, at the time the negotiations were taking place, the Hospital believed that . . . any disputes would be brought to the parties' arbitrator." Br. of Petitioner 15. There is no finding of fact to support this claim and Fallbrook has not contested the Board's findings in this case. Furthermore, the Board expressly adopted the ALJ's "finding that deferral to arbitration under *Collyer Insulated Wire*, 192 NLRB 837 (1971), is not appropriate here, because the parties [had] not executed a written contract setting forth an agreed-upon grievance-arbitration procedure." *Fallbrook*, 360 N.L.R.B. No. 73, slip op. at 1 n.2. Fallbrook does not contend that the Board's decision on this point is wrong either as a matter of fact or law.

Fallbrook additionally contends that the Board's decision to award negotiation expenses is contrary to law. In particular, Fallbrook contends that its misconduct was not as egregious as the employers' conduct in *Unbelievable*, 318 N.L.R.B. 857, *Harowe Servo Controls*, 250 N.L.R.B. 958, and other cases in which the Board has ordered a respondent to reimburse the charging party for negotiation expenses. Fallbrook's view of the applicable precedent is distorted.

The Board has made it clear that:

> [the decision in *Unbelievable*] . . . did not set the bar for an award of negotiating expenses at the level of the misconduct in that case. Nor did the Board in *Harowe Servo Controls* set some threshold level of egregiousness that must be satisfied in order to conclude that an employer's conduct infected the core of the bargaining process.

*Hosp. of Barstow, Inc.*, 361 N.L.R.B. No. 34, slip op. at 5 n.13. The Board's approach in each case is to weigh the facts in the record to determine whether a reimbursement of negotiation expenses is appropriate to "to make the charging party whole for the resources that were wasted because of the unlawful conduct, and to restore the economic strength that is necessary to ensure a return to the status quo ante at the bargaining table." *Unbelievable*, 318 N.L.R.B. at 859. The Board adhered to this standard in this case.

The Board found that Fallbrook "deliberately acted to prevent any meaningful progress during bargaining sessions that were held" and "deprive[d] the [U]nion of the opportunity to bargain during the time of the [U]nion's greatest strength." *Fallbrook*, 360 N.L.R.B. No. 73, slip op. at 2 (internal quotation marks omitted). "The Union fruitlessly expended time and financial resources associated with arranging dates to be available for bargaining, developing and drafting proposals and counter-proposals, consulting with the mediator, and keeping union members apprised of bargaining efforts." Br. for NLRB 26. Thus, the Board's determination that Fallbrook's deliberate misconduct so infected the core of the bargaining process as to justify a reimbursement of negotiations expenses remedy is supported by substantial evidence in the record and it is eminently rational.

"The Board's discretion in fashioning remedies under the Act is extremely broad and subject to very limited judicial review." *St. Francis Fed'n of Nurses & Health Prof'ls v. NLRB,* 729 F.2d 844, 848 (D.C. Cir. 1984). This means that the court has no business second-guessing the Board's judgments regarding remedies for unfair labor practices. The "choice of remedies is entitled to a high degree of deference" by a reviewing court. *Teamsters Local 115 v. NLRB*, 640 F.2d 392, 399 (D.C. Cir. 1981); *see also Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 216 (1964) (the Board's remedial power "is a broad, discretionary one, subject to limited judicial review").

In fashioning an appropriate remedy to address the substantial unfair labor practices in this case, the Board was acting at the "zenith" of its discretion. *Niagara Mohawk*, 379 F.2d at 159. Under this highly deferential standard of review, we have no basis upon which to overturn the Board's order requiring Fallbrook to reimburse the Union for negotiation expenses.

\* \* \* \*

Fallbrook has raised one additional point regarding the merits of the Board's decision. It complains that the Board failed to adequately explain its finding of causation between Fallbrook's misconduct and the Union's losses. Br. of Petitioner at 26–27. Section 10(e) of the Act prevents us from considering this argument, however, because it is raised for the first time on petition for review. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."). "Where, as here, a petitioner objects to a finding on an issue first raised in the decision of

the Board rather than of the ALJ, the petitioner must file a petition for reconsideration with the Board to permit it to correct the error (if there was one)." *Flying Food Group, Inc. v. NLRB*, 471 F.3d 178, 185 (D.C. Cir. 2006).

### D. *Motion to Remand*

As noted at the outset of this opinion, Fallbrook has requested the court to remand the case to the Board pursuant to Section 10(e) of the Act to allow the Board to reconsider its remedy of reimbursement of negotiation expenses in light of changed circumstances. The disposition of such a motion is within the "sound judicial discretion of the court." *NLRB v. Mexia Textile Mills*, 339 U.S. 563, 569 (1950) (internal quotation marks omitted). Finding no merit in Fallbrook's request, we deny the motion.

The Board issued its decision and order in this case on April 14, 2014. On May 21, 2014, Fallbrook notified Fallbrook Healthcare District, from which it leased the acute care hospital, that it intended to terminate "nearly all core services" at that hospital. On December 20, 2014, Fallbrook terminated the provision of core services at the leased acute care hospital and terminated the employment of virtually all of its employees, including all the employees represented by the Union. From August to December of 2014, Fallbrook and the Union held several bargaining sessions concerning the effects of the closure. Apparently, Fallbrook declared impasse in the effects bargaining in December 2014, with no agreement having been reached by the parties. The Union has filed at least three unfair labor practice charges against Fallbrook arising from the Hospital's conduct during the effects bargaining. Opp'n of the NLRB to Mot. to Remand, Exs. C–E.

According to Fallbrook, the "integral changed circumstances" requiring remand are: (1) the hospital no longer employs any Union-represented employees; (2) given the closure of the acute care unit, the parties will never resume negotiations toward a collective bargaining agreement; and (3) the parties have reached what appears to be an interminable impasse over effects bargaining. Petitioner's Mot. to Remand 11.

As noted above, the theory underlying Fallbrook's motion to remand is that these purported changed circumstances are "material" because the Board's decision to award negotiation expenses rested on two distinct and severable purposes: one to redress the effect of Fallbrook's past misconduct on the Union, and one to provide the Union prospective strength at the bargaining table. Fallbrook claims that the latter purpose can no longer be served because of the closure of the acute care unit, and, therefore, a principal justification for the Board's remedy has been undercut. This is a specious argument and we reject it.

Fallbrook concedes that the Board can – and did – impose a "make whole" remedy on behalf of the Union. Oral Argument at 4:05–4:09. Nonetheless, the Hospital contends that we can read into the Board's decision a second remedial purpose to restore strength to the Union solely for *prospective* bargaining sessions with Fallbrook. However, Fallbrook concedes – as it must – that this purported second remedial purpose is not actually written anywhere in the Board's decision; Fallbrook simply "believe[s] it's implied." *Id.* at 4:30. We disagree.

The plain truth here is that Fallbrook's theory regarding the Board's remedy is unsupported by the language of the Board's decision. The purpose of the Board's order – which is

plainly stated in its decision – was to reimburse the Union for resources wasted by attempting in vain to bargain with Fallbrook, *and to restore the status quo ante* – *i.e.*, to place the Union in the same position it was in before the parties began bargaining. *See* BLACK'S LAW DICTIONARY 1633 (10th ed. 2014) ("status quo ante" defined as "[t]he situation that existed before something else (being discussed) occurred"). Nothing in the Board's decision discusses prospective (*i.e.*, *future*) bargaining strength vis-à-vis Fallbrook in the manner suggested by the Hospital.

Furthermore, nothing in the Board's decision suggests that the remedy can be *apportioned* in the manner urged by Fallbrook: some percentage to remedy the resources wasted by the Union in past futile bargaining sessions with Fallbrook and some percentage for the Union's prospective power in bargaining sessions yet to come with Fallbrook. Fallbrook's argument makes no sense.

Under established case law, this court has the discretion to remand a case to the Board to hear additional evidence that is "material and [for which] there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board." *See, e.g.*, *L'Eggs Prods., Inc. v. NLRB*, 619 F.2d 1337, 1352 (9th Cir. 1980) (quoting 29 U.S.C. § 160(e)). We agree with the Board that the "changed circumstances" alleged in Fallbrook's motion are irrelevant because they do not mitigate the injury inflicted on the Union through the period of futile bargaining. Opp'n of the NLRB to Mot. to Remand 2. In addition, even taking Fallbrook's "two prongs" theory of the Board's remedy at face value, Fallbrook admits that it continued to bargain with the Union after the Board issued its decision and after the acute care unit had been closed. *See* Petitioner's Mot. to Remand 2. Therefore, even if the Board's decision contemplated "prospective" relief for the

benefit of the Union in future bargaining with Fallbrook, such future bargaining did occur after the Board issued its order. Accordingly, even if we were to accept Fallbrook's theory of the Board's decision (which we do not), we would disagree with Fallbrook that the Board's rationale for returning the Union to its status quo ante at the bargaining table was rendered moot. *See id.* at 13.

In sum, because we find no material changed circumstances necessitating a remand of the case to the Board pursuant to Section 10(e) of the Act, we deny Fallbrook's motion.

### III. CONCLUSION

For the reasons set forth above, Fallbrook's petition for review and motion for remand are denied. The Board's cross-motion for enforcement is granted.

*So ordered.*