NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 11 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

NATIONAL LABOR RELATIONS
BOARD,

Petitioner,

v.

AMPERSAND PUBLISHING, LLC, DBA
Santa Barbara News-Press,

Respondent.

No.   21-71060

NLRB Nos. 31-CA-028589
31-CA-028661
31-CA-028667
31-CA-028700
31-CA-028733
31-CA-028734
31-CA-028738
31-CA-028799
31-CA-028889
31-CA-028890
31-CA-028944
31-CA-029032
31-CA-029076
31-CA-029099
31-CA-029124

MEMORANDUM[*]

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted April 14, 2022
Pasadena, California

Before:  PAEZ, SMITH,[**] and BADE, Circuit Judges.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Ampersand Publishing, LLC ("Ampersand") does business as the *Santa-Barbara News-Press* ("*News-Press*"), a daily newspaper. The Graphic Communications Conference, International Brotherhood of Teamsters ("Union"), which represents a bargaining unit of Ampersand's employees, filed several unfair labor practice charges alleging that Ampersand violated the National Labor Relations Act ("Act"). After a hearing, the National Labor Relations Board ("NLRB" or "Board") held that Ampersand had violated numerous sections of the Act. *Ampersand Publ'g, LLC*, 362 N.L.R.B. 252, 252 & n.1 (2015). The Board entered several remedies, including that Ampersand make unit employees whole for losses they suffered because of discontinued merit pay raises and the use of non-union employees; provide backpay to two terminated employees, Dennis Moran ("Moran") and Richard Mineards ("Mineards"); and reimburse the Union for the costs and expenses it incurred in collective bargaining. *Id*. at 252-54.

The parties could not reach an agreement about the amount of backpay due to employees and the amount of reimbursement due to the Union, so the Regional Director for the relevant region of the NLRB issued a compliance specification detailing her calculations of how much Ampersand owed. The Board granted summary judgment as to portions of the specification, holding that Ampersand's

---

** The Honorable D. Brooks Smith, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

2

answer did not specifically refute the calculations. After a hearing on the remaining issues, an Administrative Law Judge ("ALJ") granted the full amount claimed in an amended version of the specification. Ampersand filed exceptions to this decision, and a three-member panel of the Board affirmed. The NLRB subsequently applied to this court for enforcement of its compliance order.[1] We have jurisdiction under 29 U.S.C. § 160(e), and we grant the petition for enforcement.

This Memorandum addresses only Ampersand's challenges to the amounts claimed in the compliance specification. In a concurrently filed opinion, we address the company's argument about whether legal fees incurred during bargaining are recoverable and hold that they are.

**1.** The Board did not err in finding that there was sufficient evidence to support the Union's claimed expenses. The Board's findings of fact are reviewed for substantial evidence, and we will "not displace the NLRB's choice between two fairly conflicting views." *Retlaw Broad. Co. v. NLRB*, 53 F.3d 1002, 1007 (9th Cir. 1995). Although the Union's lawyer, Ira Gottlieb, could no longer recall the details of his activities, the record contains extensive billing records detailing the work he performed, and the Board reasonably concluded that these records

---

[1] Because Ampersand objects to only select portions of the Board's order, the Board is entitled to summary enforcement of the unchallenged portions. *See NLRB v. Legacy Health Sys.*, 662 F.3d 1124, 1126 (9th Cir. 2011).

were contemporaneously prepared, reliable, and trustworthy. That constitutes substantial evidence to support the Union's claimed amount of legal fees.

Similarly, the record contains a careful and detailed estimate of the expenses the Union spent on its lead negotiator, Nicholas Caruso, which is sufficient to support those claimed expenses even though Caruso could not specifically recall the breakdown of his time. Although it is true that Caruso was paid a flat salary, the Board's order is fairly designed to compensate the Union for the time he spent on futile bargaining efforts rather than on other work. This is consistent with standard NLRB practice. *See Fallbrook Hosp. Corp.*, 360 N.L.R.B. 644, 646 (2014), *enf'd*, 785 F.3d 729 (D.C. Cir. 2015).

Finally, the Union's contemporaneous expense reports provide substantial evidence to support its claimed travel expenses, even though it shredded the original receipts, and to find that those expenses were normal and reasonable.[2]

---

[2] Ampersand's argument that the Union's destruction of the receipts requires reduction of the award as a sanction is unavailing. The Board reasonably determined that "[t]he documents were destroyed as part of a normal document destruction policy" and "there is no evidence that any document was shredded as a result of any fraud, bad faith, or desire to suppress the truth." And Ampersand offered no reason to believe that it suffered any prejudice "occasioned by the destruction of the records." In the absence of either bad faith or prejudice, the Board's determination that the Union should be awarded its full claimed expenses was not erroneous. *See Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015). For the same reasons, we also reject Ampersand's argument that Moran and Mineards's failure to maintain written records of their job search should lead to a reduction in their backpay awards.

Although Ampersand asserted—without citation to authority—that it was unreasonable for the Union to use a negotiator from out of state, we do not agree.

2. Ampersand challenges the specific backpay awards for Moran and Mineards, arguing that both men failed to make reasonable efforts to mitigate their damages and that their backpay should therefore be reduced. The NLRB's power to order backpay "is a broad discretionary one, subject to limited judicial review." *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 216 (1964). We will overturn an order on backpay only when the award is "arbitrary or unreasonable," *NLRB v. Int'l Ass'n of Bridge, Structural & Reinforced Iron Workers Union, Local 378*, 532 F.2d 1241, 1242 (9th Cir. 1976), or where there is "no substantial evidence to support the Board's findings," *NLRB v. United Bhd. of Carpenters*, 531 F.2d 424, 426 (9th Cir. 1976). Once the General Counsel has established the gross amount of backpay due to a claimant, "the burden shifts to the employer to establish facts that would reduce that amount." *Kawasaki Motors Mfg. Corp., USA v. NLRB*, 850 F.2d 524, 527 (9th Cir. 1988). "This is a difficult burden because doubts must be resolved against the employer who committed the unfair labor practice." *Id.*

Ampersand argues that Moran failed to sufficiently mitigate his damages because he voluntarily quit his interim employment. When a discriminatee voluntarily quits his interim employment, the General Counsel bears the burden of

5

showing that the decision to quit was reasonable. *See Minette Mills, Inc.*, 316 N.L.R.B. 1009, 1010 (1995). The Board concluded that the General Counsel had met this burden in light of the increased work demands, financial hardship, and lack of support Moran experienced in his interim employment. This finding is supported by substantial evidence in the record, particularly Moran's own unrebutted credible testimony. A discriminatee "is not required to seek or retain a job more onerous than the job from which he or she was discharged," and the Board properly concluded that Moran's decision to leave his interim job did not undermine his overall efforts to mitigate his damages. *Kawasaki Motors*, 850 F.2d at 528.

Ampersand argues that Mineards failed to sufficiently mitigate his backpay damages because he took a lower-paying, part-time job as interim employment and stopped looking for additional work once he began receiving a pension and Social Security benefits. A discriminatee "must seek interim employment substantially equivalent to the position of which he or she was unlawfully deprived and that employment must be suitable to a person of like background and experience." *Tubari Ltd. v. NLRB*, 959 F.2d 451, 454 (3d Cir. 1992) (internal quotation marks and citation omitted). The interim employment need not pay the same to be considered substantially equivalent, however, and "a discriminatee who accepts suitable interim employment, even at a lower wage, has no continuing duty to

6

search for a more lucrative job." *Id*. at 458.  Here, the Board found that Mineards's position with the *Montecito Journal* was substantially equivalent to his prior position with the *News-Press*.  This finding was supported by substantial evidence in the record, and Ampersand does not offer any evidence to compel the conclusion that the backpay award should be reduced.  And even if the jobs had not been substantially equivalent, Ampersand did not carry its burden of proving that Mineards failed to use reasonable diligence in seeking other employment because it offered no evidence that substantially equivalent jobs existed and that Mineards was not reasonably diligent in seeking them.  Therefore, its mitigation defense fails.

**3.**  Ampersand raises two evidentiary objections in brief and conclusory footnotes.  These fail to raise any arguments with sufficient specificity, *see* Fed. R. App. P. 28(a)(8)(A), so we do not consider them, *see Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

**PETITION FOR ENFORCEMENT GRANTED.**