# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――

Argued February 9, 2016         Decided June 10, 2016

No. 12-1071

CAMELOT TERRACE, INC. AND GALESBURG TERRACE, INC.,
PETITIONERS

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

SERVICE EMPLOYEES INTERNATIONAL UNION,
HEALTHCARE ILLINOIS INDIANA (PREVIOUSLY SEIU LOCAL 4),
INTERVENOR

―――――

Consolidated with 12-1218

―――――

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board

―――――

*Christopher Landau* argued the cause for the petitioners. *John S. Irving*, *Jr.* was with him on brief.

*Barbara A. Sheehy*, Attorney, National Labor Relations Board, argued the cause for the respondent. *Richard F. Griffin*, *Jr.*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General

Counsel, and *Usha Dheehan*, Supervisory Attorney, were with her on brief.

Margaret Angelucci was on brief for the intervenor, Service Employees International Union, Healthcare Illinois Indiana (previously SEIU Local 4) in support of the respondent.

Before: HENDERSON and ROGERS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*:  Camelot Terrace, Inc. (Camelot) and Galesburg Terrace, Inc. (Galesburg) (collectively, Companies) petition for review of a decision and order of the National Labor Relations Board (Board) determining that the Companies violated the National Labor Relations Act (Act), 29 U.S.C. §§ 151 *et seq.*, by engaging in bad-faith bargaining with the Service Employees International Union (Union).  The Companies do not contest the Board's conclusion that they violated the Act; rather, they challenge two of the remedies the Board imposed: (1) reimbursement of litigation costs incurred by both the Board and the Union during Board proceedings and (2) reimbursement of "all" of the negotiation expenses the Union incurred during its bargaining sessions with the Companies. *See Camelot Terrace*, 357 N.L.R.B. No. 161, 2011 WL 7121892, at *13, *15 (Dec. 30, 2011).  The Companies assert that the Board is without authority to impose either remedy. Alternatively, they argue that the amount of the bargaining-costs remedy—"all" of the Union's bargaining expenses—exceeds the amount necessary to remedy the harm caused by the Companies' conduct and is improperly punitive.

We agree that the Board lacks authority to require the reimbursement of litigation costs incurred during Board proceedings, *see HTH Corp. v. NLRB*, No. 14-1222, 2016 WL 2941936, at \*9–11 (D.C. Cir. May 20, 2016), but hold that the Board may require an employer to reimburse a union's bargaining expenses pursuant to its remedial authority under section 10(c) of the Act. We also conclude that we lack jurisdiction to entertain the Companies' alternative challenge to the amount of the bargaining-costs award because they failed to raise it before the Board. Accordingly, we grant the Companies' joint petition in part and grant the Board's cross-application for enforcement in part.

## I.

Camelot and Galesburg both operate nursing homes in Illinois. In 2007, the Union was certified as the exclusive representative of employees at both facilities. Over the course of 2008 and 2009, the Companies—primarily through the conduct of their common owner, Michael Lerner—repeatedly bargained with the Union in bad faith.[1] The Board's Office of the General Counsel (OGC) got involved, leading to a

---

[1] Because the Companies do not contest their underlying violations of the Act, there is no need to describe their bad-faith conduct in great detail. Their conduct included "restricting the dates and length of bargaining sessions, repeatedly canceling and shortening sessions, reneging on or withdrawing from tentative agreements without good cause, refusing to bargain on economic subjects, and refusing to make economic proposals." *Camelot Terrace*, 357 N.L.R.B. No. 161, 2011 WL 7121892, at \*1. The Companies violated the Act in other ways as well, including dealing directly with Union-represented employees, unilaterally changing the terms and conditions of employment without providing notice or bargaining opportunity to the Union and firing an employee under a unilaterally-implemented attendance policy.

4

settlement agreement detailing specific bargaining requirements the Companies were to satisfy. When the Companies failed to abide by the terms of the agreement and continued to bargain in bad faith, the OGC issued a complaint charging the Companies with numerous violations of the Act. After holding a hearing and concluding that the Companies had indeed violated the Act, an Administrative Law Judge (ALJ) ordered, *inter alia*, that the Companies "[r]eimburse the [Board] . . . and the Union for all costs and expenses incurred in the investigation, preparation and conduct of [the case] before the Board and the courts." *Camelot Terrace*, 357 N.L.R.B. No. 161, 2011 WL 7121892, at \*125. The ALJ also ordered the Companies to "[r]eimburse the Union for all costs and expenses incurred in collective-bargaining negotiations from January 2008 to the [parties'] last bargaining session." *Id.*

The Companies filed exceptions with the Board, challenging the imposition of these two remedies. In a two-to-one decision, the Board held that it was authorized to impose both remedies and did so with one modification.[2] The bargaining-costs remedy, the Board concluded, was a necessary exercise of its general remedial power: "[o]nly by ordering the reimbursement of the Union's negotiating expenses [could] the Board reasonably restore the Union's previous financial strength and consequent ability to carry out effectively its responsibilities as the employees' representative." *Id.* at \*6. As for the litigation-costs remedy, the Board concluded that it "has inherent authority to control

---

[2] The Board modified the litigation-costs remedy by eliminating the award for costs incurred in court proceedings, "leav[ing] that determination to the discretion of the court [of appeals]." *Camelot Terrace*, 357 N.L.R.B. No. 161, 2011 WL 7121892, at \*6 n.8.

its own proceedings, including the authority to award litigation expenses through the application of the 'bad-faith' exception to the American Rule." *Id.* The Board declared that its "inherent authority" was sufficient to support the remedy and therefore found it "unnecessary to pass on the [Companies'] argument that the Board's remedial authority under [section] 10(c) of the Act does not encompass the award of litigation expenses." *Id.* at *6 n.10. Member Hayes dissented from the Board's decision on the litigation-costs remedy, explaining that the Board is "not free to invoke principles of 'inherent authority' in order to unilaterally vest the Board with powers beyond those contemplated by the legislature." *Id.* at *17 (Member Hayes, dissenting). The Companies petitioned for review, challenging the Board's authority to impose the two remedies. The Board cross-applied for enforcement.

## II.

At the outset, because "the Board is entitled to enforcement of all unchallenged portions of its order," we summarily enforce all such provisions of the Board's decision. *United Food & Commercial Workers Union Local 204 v. NLRB*, 447 F.3d 821, 824 (D.C. Cir. 2006) (per curiam). As for the two reimbursement orders the Companies do challenge, although we generally afford the Board deference in reviewing its chosen remedies, *see Great Lakes Chem. Corp. v. NLRB*, 967 F.2d 624, 629 (D.C. Cir. 1992) ("The Board has broad authority in devising remedies to effectuate the policies of the Act, subject only to limited judicial review." (citation and internal quotation marks omitted)), deference is limited if a party challenges the Board's authority to order a particular remedy under *any* circumstance. In that case, to the extent the Board claims its remedial authority arises from the Act, we defer to the Board "only so far as '[its] interpretation is rational and consistent with the statute.' " *Unbelievable, Inc. v.*

*NLRB*, 118 F.3d 795, 804 (D.C. Cir. 1997) (quoting *NLRB v. United Food & Commercial Workers*, 484 U.S. 112, 123 (1987)). To the extent the Board relies on extra-statutory authority, we afford no deference at all. *See HTH Corp.*, 2016 WL 2941936, at *9–11 (evaluating Board's "inherent authority" to award litigation costs without deference); *see also Local 777, Democratic Union Org. Comm. v. NLRB*, 603 F.2d 862, 869 n.17 (D.C. Cir. 1978) ("Ordinarily, we show considerable deference to the judgment of the [Board] . . . [but] where the issues involved are purely legal . . . , the Board's interpretation is entitled to no particular deference.").

Here, the Companies have abandoned (or forfeited, *see infra* at 10–11) any claim that reimbursement of litigation or bargaining expenses was inappropriate in their particular case; rather, they attack the Board's authority to award bargaining and litigation costs in *all* cases. Accordingly, we defer to the Board's view of the matter only insofar as its interpretation of its statutory power is "rational" and "consistent" with the Act. *See Unbelievable, Inc.*, 118 F.3d at 804.

## A. Litigation Costs

The Companies first claim that "the Board has neither statutory nor inherent authority to award litigation expenses, including attorney's fees, as a remedy for an unfair labor practice." Pet'rs' Br. 12. For the reasons discussed in *HTH Corp. v. NLRB*, we agree. There, as here, the Board "claimed that, like a federal court, it has inherent authority to control and maintain the integrity of its own proceedings through an application of the bad-faith exception to the American Rule" and ordered an employer to pay the litigation expenses of a union and of the OGC. *HTH Corp.*, 2016 WL 2941936, at *9 (internal quotation marks omitted). We declined to enforce the order. *See id.* at *11. Recognizing that "[a]s a creature of

statute the Board has only those powers conferred upon it by Congress," we held that "the Board may apply the bad-faith exception to the American rule only if some provision or provisions of the Act explicitly or implicitly grant it power to do so." *Id.* at *9. Although the Board "relied solely on its inherent authority to control and maintain the integrity of its own proceedings," and the court recognized "that it is wrong to speak of agencies as having *any* inherent authority," the majority—perhaps in an effort to give the Board the benefit of the doubt—went on to consider whether the Act's general endowment of remedial authority under section 10(c) "implicitly authorizes fee shifting based on bad faith." *See id.* at *9–10 (emphasis in original) (internal quotation marks omitted). The majority ultimately concluded that section 10(c) did not do so, primarily because "the Supreme Court has consistently classified application of the bad-faith exception to the American rule as punitive," *id.* at *10 (citing *Hall v. Cole*, 412 U.S. 1, 5 (1973)), and a "[section] 10(c) remedy . . . 'must be truly remedial and not punitive,' " *id.* (quoting *Capital Cleaning Contractors, Inc. v. NLRB*, 147 F.3d 999, 1009 (D.C. Cir. 1998)).

Our decision in *HTH* controls. As in *HTH*, the Board in this case claims the power to require the Companies to pay the Board's litigation costs and those of the Union solely on the basis of its "inherent authority." *Camelot Terrace*, 357 N.L.R.B. No. 161, 2011 WL 7121892, at *6 & n.10. But as *HTH* makes plain, the Board possesses *no* extra-statutory "inherent authority." *HTH Corp.*, 2016 WL 2941936, at *9. Moreover, to the extent the Board meant "implicit in section 10(c)" when it said "inherent," *see id.* at *10, it loses on that score as well—section 10(c) neither explicitly nor by implication authorizes the Board to award litigation costs, *see id.* at *10–11. Accordingly, we deny enforcement of the litigation-costs order. *See id.* at *11.

## B.  Bargaining Costs

The Companies also challenge the Board's general authority to require one party to reimburse another's bargaining costs; in the alternative, the Companies claim that the Board may not award the Union "all" of its bargaining costs because the Union would have incurred at least *some* of those costs had the Companies bargained in good faith.

### 1.

As a threshold matter, the Board contends that we lack jurisdiction to entertain these two claims because the Companies failed to raise them with the Board.  It is well settled that, absent "extraordinary circumstances," if a party fails to "urge[]" an objection before the Board, we lack jurisdiction to consider it for the first time on appeal.  29 U.S.C. § 160(e); *see also Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665–66 (1982); *HTH Corp.*, 2016 WL 2941936, at \*3.   In assessing forfeiture under section 10(e) of the Act, "the critical question" is "whether the Board received adequate notice of the basis for the objection."  *Alwin Mfg. Co. v. NLRB*, 192 F.3d 133, 143 (D.C. Cir. 1999); *see also DHL Express, Inc. v. NLRB*, 813 F.3d 365, 372 (D.C. Cir. 2016) (considering whether "petitioner's brief in support of its exceptions adequately put the Board on notice of the grounds on which the petitioner is objecting" (internal quotation marks omitted)).   "While we have not required that the ground for the exception be stated explicitly in the written exceptions filed with the Board, we have required, at a minimum, that the ground for the exception be 'evident by the context in which [the exception] is raised.' "  *Parsippany Hotel Mgmt. Co. v. NLRB*, 99 F.3d 413, 417 (D.C. Cir. 1996) (alteration in original) (quoting *Consol. Freightways v. NLRB*, 669 F.2d 790, 794 (D.C. Cir. 1981)).

Here, the Companies' written exceptions and supporting briefs together preserved their argument that the Board generally lacks authority to require reimbursement of bargaining costs—but just barely. The Companies' exception to the bargaining-costs remedy was indeed "vague," *see DHL Express*, 813 F.3d at 372, but nonetheless charged that the bargaining-costs remedy violated "established Board law and policy," Resp'ts' Exceptions to the A.L.J.'s Decision 2 (Mar. 10, 2010). Similarly, although their supporting brief was "no paragon of precision or detail," it included several statements "adequate to apprise the Board that the Compan[ies] intended to press the question now presented"—that the Board lacked the power to require reimbursement of bargaining costs. *See NLRB v. Blake Constr. Co.*, 663 F.2d 272, 284 (D.C. Cir. 1981).

The best example is an express statement to that effect in one of the brief's headings, which read, "The Board Lacks Authority to Award Litigation Expenses *and Bargaining Costs*." Resp'ts' Br. in Supp. of Exceptions to the A.L.J.'s Decision 4 (emphasis added). Other parts of the brief also apprised the Board that its authority was being questioned. The Companies averred that the ALJ "made erroneous legal conclusions with regard to the [bargaining-costs] remedy," *id.* at 2, and in a different subheading stated, "The Board Lacks the Inherent Authority to Award *Costs*," *id.* at 6 (emphasis added). And notwithstanding these sections of the brief primarily addressed litigation costs, the brief transitioned into a new section with the statement, "[e]ven if the Board has the authority to order a respondent to pay litigation *and bargaining costs*," *id.* at 6 (emphasis added), indicating to the Board that the brief's discussion of the generic "costs," *see id.*, was meant to cover bargaining costs as well as litigation costs. We therefore conclude that "the Board received adequate notice of

the basis for the [Companies'] objection," *see Alwin*, 192 F.3d at 143, and we may consider the merits of the challenge.

The same is not true of the Companies' alternative argument that even if the Board has the authority to award bargaining costs generally, it may not award "all" of the Union's costs.  The thrust of the claim is that the Board may award bargaining costs only to the extent the Companies' bad-faith conduct *caused* the Union to incur such costs unnecessarily.  Because "the Union undoubtedly would have incurred some bargaining costs" even if the Companies had properly discharged their duty to negotiate in good faith, the Companies argue that, in awarding the Union "all" of its bargaining costs, the Board "crossed the line separating permissible remedial action from impermissible punitive action."  Pet'rs' Br. 28–29.  The Companies never presented this argument to the Board but they argue that we should nonetheless consider it because the award is "patently in excess of [the Board's] authority," *see Alwin*, 192 F.3d at 143 n.13 (alteration in original) (quoting *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 311 n.10 (1979)), and therefore their failure to raise the issue should be "excused because of extraordinary circumstances," 29 U.S.C. § 160(e).

Although "a remedy that is patently *ultra vires*" generally warrants review even if not challenged at the Board level, *see HTH Corp.*, 2016 WL 2941936, at *3 (citing *Alwin*, 192 F.3d at 143 n.13), the bargaining-costs remedy at issue does not patently run afoul of the limits on the Board's power.  If the Board has the authority to award bargaining costs generally, it is not inconceivable that requiring the reimbursement of *all* of a party's bargaining expenses might be necessary; for instance, if an employer repeatedly schedules bargaining sessions with a union but is a perpetual no-show, reimbursing all of the expenses the union incurred in connection with those planned

sessions when no bargaining in fact took place would be required to return the union to its financial position *ex ante*, which is the Board's justification for awarding bargaining costs in the first place. *See Fallbrook Hosp. Corp. v. NLRB*, 785 F.3d 729, 732 (D.C. Cir. 2015) (bargaining-costs remedy "warranted . . . to restore the economic strength that is necessary to ensure a return to the status quo ante at the bargaining table" (internal quotation marks omitted)). Thus, such an award is not "obviously *ultra vires*" in all circumstances. *See Alwin*, 192 F.3d at 143 n.13.

Nor is it obvious that an award of all of the Union's expenses was not necessary to remedy the wrong here; indeed, the Board may well have concluded as much. This fact underscores why we lack jurisdiction to consider this claim on the merits—the Board has the first crack at answering whether and why awarding "all" of a union's bargaining expenses is necessary in the particular circumstances of the case before it. *See Local 900, Int'l Union of Elec., Radio & Mach. Workers v. NLRB*, 727 F.2d 1184, 1192 (D.C. Cir. 1984) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952))). The Board had no reason to do so when the Companies never raised this question in an exception or in a motion for reconsideration; we lack jurisdiction, then, to address the claim for the first time on appeal.[3]

_____

[3] This does not mean, however, that the Companies are prohibited from raising this argument before the Board at the compliance stage. At oral argument, in comparing the Board order in *HTH* that noted the union bore the burden of establishing a causal

**2.**

Because the Companies forfeited their extent-of-the-bargaining-costs claim, only one question remains for consideration on the merits—whether the Board *ever* has the authority to require a party to reimburse another's bargaining costs. The Companies contend that the Board has no such power. On their theory, the Board's job is to enforce substantive legal rights; it may not, however, require one party to reimburse another for the costs incurred in vindicating those rights. They view bargaining costs as "indistinguishable from litigation costs" in that both "represent the price of attempting to vindicate substantive legal rights." Pet'rs' Br. 24. Therefore, just as awarding litigation costs is *aliunde* the Board's remedial authority, so is requiring one party to reimburse another's bargaining costs. The Board, in contrast, contends that requiring a party that has engaged in particularly egregious bad-faith bargaining to reimburse another party's bargaining costs is well within its remedial power under section 10(c) of the Act.

We agree with the Board. When the Board determines that a party has committed an unfair labor practice, section 10(c) of the Act gives it "discretion to fashion appropriate remedies." *Fallbrook*, 785 F.3d at 734. Specifically, the Board "shall issue . . . an order requiring [a violator] to cease

---

relationship between the costs awarded and the unfair labor practice, *see HTH Corp.*, 361 N.L.R.B. No. 65, at 5 (Oct. 24, 2014), to the Board award of "all" bargaining costs here, the Board counsel explained, "[I]t was a different sort of remedy [in *HTH*] than you've seen, so [the Board] w[as] reminding the Union we've not imposed something like this before, so FYI, here's what you need to do in compliance, but I don't think it's any different than in other typical compliance proceeding[s]." Oral Arg. Tr. 50:1–5.

and desist from such unfair labor practice, and to take such affirmative action . . . as will effectuate the policies of [the Act]." 29 U.S.C. § 160(c). "[T]he thrust of affirmative action redressing the wrong incurred by an unfair labor practice," according to the United States Supreme Court, "is to . . . restor[e] the economic status quo that would have obtained but for the company's wrongful [act]. The task of the [Board] in applying § 10(c) is to take measures designed to recreate the conditions and relationships that would have been had there been no unfair labor practice." *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 769 (1976) (some alterations in original) (citations and internal quotation marks omitted).

Although we have never directly held that reimbursement of bargaining expenses is the type of "affirmative action" that "effectuate[s] the policies" of the Act, 29 U.S.C. § 160(c), the Board has repeatedly asserted as much, *see, e.g.*, *Unbelievable, Inc.*, 318 N.L.R.B. 857, 859 (1995), *enf'd in relevant part*, 118 F.3d 795; *Fallbrook Hosp. Corp.*, 360 N.L.R.B. No. 73, 2014 WL 1458265, at *2 (Apr. 14, 2014), *enf'd*, 785 F.3d 729, and we have discussed the Board's reasoning favorably. As we explained in *Fallbrook Hospital Corporation*, "a reimbursement remedy is appropriate 'where it may fairly be said that [an employer's] substantial unfair labor practices have infected the core of a bargaining process to such an extent that their effects cannot be eliminated by the application of traditional remedies.'" 785 F.3d at 732 (alteration in original) (quoting *Fallbrook Hosp. Corp.*, 360 N.L.R.B. No. 73, 2014 WL 1458265, at *2). "Such a remedy is warranted both to make the charging party whole for the resources that were wasted because of the unlawful conduct, and to restore the economic strength that is necessary to ensure a return to the status quo ante at the bargaining table." *Id.* (internal quotation marks omitted). Accordingly, we noted that " '[i]n cases of unusually aggravated misconduct,' the Board may order an

offending party 'to reimburse the charging party for negotiation expenses.' " *Id.* at 734 (quoting *Unbelievable, Inc.*, 318 N.L.R.B. at 859).[4]

Confronted directly with the question for the first time, we too find the Board's reasoning persuasive. An award of bargaining expenses remedies an unfair labor practice by ensuring that, upon resolution of the unfair labor practice charge, the injured party can return to negotiations on the same footing it occupied before the violation of the Act occurred. *See Fallbrook*, 785 F.3d at 732. A more traditional remedy, such as a bargaining order, is of little value if one party can drain another of its resources by bargaining in bad faith and then extracting concessions as the money wanes. *See Unbelievable, Inc.*, 318 N.L.R.B. at 858 ("[A] bargaining order alone will not ensure meaningful bargaining, because it cannot restore the Union[] to [its] position[] prior to the futile negotiations. In fact, limiting the remedy to the conventional bargaining order would effectively permit the [employer] to benefit from its violations of the Act by ensuring bargaining

---

[4] In *Fallbrook* and *Unbelievable*, we were not confronted with the question of the Board's general authority to order reimbursement of bargaining costs; rather, we considered only whether the Board had misapplied its own precedent in deciding that the bargaining-costs remedy was warranted on the factual records those cases presented. *See Fallbrook*, 785 F.3d at 736–37 (employer argued Board improperly determined it had engaged in "unusually aggravated conduct"); *Unbelievable, Inc.*, 118 F.3d at 799 ("The [employer] does not question the Board's authority to order a respondent to reimburse the charging party for negotiation expenses if the respondent's misconduct has been unusually aggravated . . . . The Company does argue, however, that there is not substantial evidence in the record considered as a whole to support the Board's findings of fact."). Here, in contrast, the Companies challenge the Board's authority to award bargaining costs generally.

with [a] Union[] that [has] been economically weakened by the [employer's] misconduct.").   By instead allowing the harmed party to be returned to its financial position *ex ante*, the Board "effectuate[s] the policies of the Act."   *See id.*; *see also Bowman Transp. Co.*, 424 U.S. at 769.

The Companies do not dispute this rationale *per se*; in fact, they acknowledge that "[a]n award of bargaining costs . . . can be deemed 'remedial' in a broad sense."   Pet'rs' Br. 27. Rather, they hold fast to their contention that bargaining costs and litigation costs are the same, and, if litigation costs cannot be shifted under the American Rule, neither can bargaining costs.   The "harm" a bargaining-costs reimbursement order "remedies," they claim, is "not the sort of harm that is generally cognizable in our legal system—the time and expense necessary for a party to vindicate its substantive legal rights."   *Id.*

We reject this approach for several reasons.   *First*, although the Companies make broad appeals to "tradition," "our legal culture" and "our legal system," *see id.* at 24, 27, noticeably absent from their brief is any case suggesting the American Rule extends beyond the context of litigation or other quasi-judicial adversarial proceedings.   That is to say, although it is well-established that litigation costs are subject to the longstanding, pay-your-own-way tradition the Companies describe, *see, e.g.*, *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247–63 (1975), the Companies have offered no authority for the proposition that the same tradition applies to costs incurred during private contractual negotiations outside the litigation context.   *See* Pet'rs' Br. 24–27.

*Second*, even granting the Companies their premise, their view of bargaining as a means of "vindicat[ing] substantive

legal rights," *id.* at 24, misses the mark. The Act grants the employer and the union alike the right to good-faith bargaining, 29 U.S.C. § 158(d), and a violation of the right—like any unfair labor practice—supports a remedy making the wronged party whole, *cf. Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 747 (1983) ("[T]he Board may order the employer to reimburse the employees whom he had wrongfully sued for their attorneys' fees and other expenses."). Thus, even assuming *arguendo* that "our legal culture" prohibits a party from recovering the costs of "vindicat[ing]" substantive rights as a general matter, *see* Pet'rs' Br. at 24, such a rule would not prohibit the Board from awarding bargaining costs for bad-faith conduct during collective bargaining.

*Third*, and finally, the justifications for awarding bargaining costs and for awarding litigation costs pursuant to the bad-faith exception to the American Rule are not, contrary to the Companies' claim, "essentially the same," *see id.* at 26; indeed, there are critical differences. The U.S. Supreme Court has explained that a litigation-cost award is, in the context of the bad-faith exception, a punitive measure—it "vindicate[s] [a court's] authority over a recalcitrant litigant." *Chambers v. NASCO*, 501 U.S. 32, 53 (1991) (some alterations in original) (internal quotation marks omitted). Moreover, "[t]hat the award ha[s] a compensatory effect does not" deprive it of its punitive purpose. *See id.* (some alterations in original) (internal quotation marks omitted). In contrast, the Board's rationale for awarding bargaining costs is consistent with the "thrust of affirmative action" effectuating the Act's purposes—"restor[ing] the economic status quo that would have obtained but for the [Companies'] wrongful [acts]." *Bowman Transp. Co.*, 424 U.S. at 769 (internal quotation marks omitted). And just as the incidental "compensatory effect" of a litigation-costs award does not render that award

"remedial," *see Chambers*, 501 U.S. at 53 (internal quotation marks omitted), neither does the incidental deterrent effect of a bargaining-costs award render it "punitive." Indeed, awards that our "legal culture," *see* Pet'rs' Br. 24, plainly treats as remedial—such as compensatory damages in a tort suit—often have (and are intended to have) a deterrent effect. *See, e.g.*, 1 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, The Law of Torts § 14 (2d ed. updated 2015) (West) ("Courts and writers almost always recognize that another aim of tort law is to deter certain kinds of conduct by imposing liability when that conduct causes harm."). The same is true of bargaining expenses in the labor law context. Although an award of such costs might make the Companies think twice before again wasting the Union's time, the primary justification for the award is to make the Union whole and "to recreate the conditions . . . that would have been had there been no unfair labor practice." *Bowman Transp. Co.*, 424 U.S. at 769 (internal quotation marks omitted).

Accordingly, we have little trouble concluding that awarding bargaining costs in the appropriate case is within the Board's statutory remedial authority under section 10(c) of the Act. Because the Companies do not challenge the Board's conclusion that they engaged in "unusually aggravated misconduct" that "infected the core of a bargaining process," *see Fallbrook*, 785 F.3d at 732, 734 (internal quotation marks omitted), we enforce the Board's order requiring the Companies to reimburse the Union for its bargaining costs.

For the foregoing reasons, we grant the Companies' petition for review with respect to the litigation-costs remedy and enforce the remainder of the Board's order.

*So ordered.*