FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, *Petitioner*, v. AMPERSAND PUBLISHING, LLC, DBA Santa Barbara News-Press, *Respondent*. | No. 21-71060 NLRB Nos. 31-CA-028589 31-CA-028661 31-CA-028667 31-CA-028700 31-CA-028733 31-CA-028734 31-CA-028738 31-CA-028799 31-CA-028889 31-CA-028890 31-CA-028944 31-CA-029032 31-CA-029076 31-CA-029099 31-CA-029124 OPINION |

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted April 14, 2022
Pasadena, California

Filed August 11, 2022

Before:  Richard A. Paez, D. Brooks Smith,[*] and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Paez

**SUMMARY[**]**

**National Labor Relations Boars / Fees**

The panel granted the National Labor Relations Board's petition for enforcement of its compliance order requiring an employer to reimburse a union for legal fees incurred during the collective bargaining process.

The Board found that the employer engaged in unusually aggravated misconduct sufficient to warrant more than a traditional remedy, and ordered the employer to reimburse the union for the costs and expenses the union incurred during collective bargaining sessions.  On appeal, the D.C. Circuit upheld the Board's findings and enforced its orders in full.  The parties could not reach an agreement on the total amount the employer should be required to pay in remedies, and in July 2018, the Regional Director for NLRB Region 27 issued a compliance specification detailing how much the employer owed.  After the employer responded to the

---

[*] The Honorable D. Brooks Smith, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

specification, the Board granted the Board's General Counsel's motion for partial summary judgment. On remand, an administrative law judge granted the full amount of claimed costs and expenses incurred by the union during bargaining.  The Board applied to this court for enforcement of its compliance order.

The union incurred legal fees for consultations with its outside counsel during contract negotiations, and the Regional Director included those fees in the compliance order as part of the bargaining expenses for which the employer was required to reimburse the union.  The panel rejected the employer's argument that D.C. Circuit precedent established that the Board lacked power to order the reimbursement of legal fees. The panel held that the D.C. Circuit's opinions were specifically limited to the context of litigation, and they did not bar the award at issue here.  The National Labor Relations Act grants the Board broad discretion to impose remedies for unfair labor practices.  The panel held that the award of legal fees in this case was exactly the sort of remedy that courts have upheld as within the Board's statutory remedial authority.  Prior adjudications established that the employer committed an unfair labor practice by refusing to bargain with the union in good faith. The remedy was directly targeted at the employer's violation.  Notably, the Board's compliance order included only those legal fees incurred during collective bargaining. The bargaining process involved only the employer and the union, with no active participation by Board officials.  The fact that attorney Ira L. Gottlieb was a lawyer who at time represented the union in litigation before the Board did not mean that his fees incurred in the collective bargaining process must automatically be considered litigation expenses, without any consideration of the actual work he was paid to perform.

The panel concurrently filed a memorandum disposition rejecting the employer's remaining objections to the compliance order.

## COUNSEL

Gregoire Sauter (argued), Attorney; Julie Broido, Supervisory Attorney; David Habenstreit, Assistant General Counsel; Ruth E. Burdick, Deputy Associate General Counsel; Peter Sung Ohr, Deputy General Counsel; Jennifer A. Abruzzo, General Counsel; National Labor Relations Board, Washington, D.C.; for Petitioner.

Amber Henry (argued) and Christopher Frost, Eisner LLP, Beverly Hills, California, for Respondent.

**OPINION**

PAEZ, Circuit Judge:

This appeal presents the question of whether the National Labor Relations Board ("NLRB" or "Board") may order an employer to reimburse a union for legal fees incurred during the contract bargaining process.[1] We hold that it may, and we therefore grant the NLRB's petition for enforcement of its compliance order.[2]

**BACKGROUND**

**A. The NLRB Administrative Process**

To provide context for the issue we decide here, a brief overview of the NLRB administrative process is in order. The National Labor Relations Act ("NLRA" or "Act") grants employees the right to bargain collectively through representatives of their own choosing. *See* 29 U.S.C. § 157. A common path to forming a union is through the union election process. During the election process, any party can file objections to conduct it believes could interfere with employee free choice in the election, and the NLRB reviews and adjudicates those objections. *See* 29 C.F.R. § 102.69(c) (2022). If a majority of the employees vote in favor of the union and the results of the election are certified by the NLRB, the union becomes the exclusive bargaining agent for the employees in the unit and is entitled to recognition by

---

[1] We construe the term "legal fees" to include both attorney's fees and related expenses, as described in the NLRB's compliance order.

[2] In a concurrently filed Memorandum, we reject Ampersand Publishing, LLC's ("Ampersand's") remaining objections to the compliance order.

the employer. *See id.* § 102.69(h). At that point, the employer is required to meet with the union to bargain in good faith over the conditions of employment. *See* 29 U.S.C. § 158(a)(5). Failure to do so is considered an unfair labor practice. *See id.*; *see also Frankl v. HTH Corp.*, 650 F.3d 1334, 1358 (9th Cir. 2011) (citing *Regency Serv. Carts, Inc.*, 345 N.L.R.B. 671, 671 (2005)).

Any person may file a charge with the NLRB alleging that a person or organization has engaged in an unfair labor practice. *See* 29 C.F.R. § 101.2, 102.9. The NLRB is empowered to prevent such practices. *See* 29 U.S.C. § 160(a). Charges are filed with the NLRB Regional Director for the region in which the alleged violation occurred, *see* 29 C.F.R. § 101.2, and that official is responsible for investigating to determine if there is sufficient evidence to substantiate a charge, *see id*. § 101.4. If the Regional Director finds that a charge has merit, she initiates formal action by issuing a complaint. *See id*. § 101.8. Complaints are adjudicated in a hearing before an Administrative Law Judge ("ALJ"), *see id.* § 101.10(a), whose decision may be appealed to the Board, *see id*. § 101.12(a).

The General Counsel for the NLRB ("General Counsel") prosecutes the government's case. *See* 29 U.S.C. § 153(d). The charging party may participate in the proceedings in a variety of ways, including by calling witnesses, introducing evidence, submitting briefs, and engaging in oral argument, but it is not required to do so. *See* 29 C.F.R. § 101.10(a); *Unbelievable, Inc. v. NLRB*, 118 F.3d 795, 803 (D.C. Cir. 1997). Agency approval is required to withdraw the complaint. *See* 29 C.F.R. §§ 102.9, 102.18. Any settlement is also subject to agency approval and may be entered over the objections of the charging party. *See id*. § 101.9.

## B.  Factual and Procedural Background

Ampersand does business as the *Santa Barbara News-Press*, a daily newspaper.  In September 2006, Ampersand's newsroom employees voted to be represented by the Graphic Communications Conference, International Brotherhood of Teamsters ("Union").  Ampersand filed objections to the election process, but the results were ultimately certified by the Board.

Between November 2007 and April 2009, Ampersand and the Union met several times to negotiate a collective bargaining agreement.  Concurrently, the Union filed various unfair labor practice charges against Ampersand stemming from the company's actions during the bargaining process.  The Regional Director for NLRB Region 31 consolidated these charges into the underlying complaint in this case.  Following a hearing, an ALJ held that Ampersand had violated sections 8(a)(1), 8(a)(3), and 8(a)(5) of the NLRA.  The ALJ identified a number of unfair labor practices, including the paper's discontinuance of its merit pay raise program; its transfer of bargaining unit work to non-union temporary employees without notice; its discharge of two employees, Dennis Moran and Richard Mineards; and its bad-faith bargaining with the Union.  *See Ampersand Publ'g, LLC* (*Ampersand I*), 358 N.L.R.B. 1415, 1501–02 (2012).  The ALJ's findings were adopted in full by a three-member panel of the Board.  *See Ampersand Publ'g, LLC* (*Ampersand II*), 362 N.L.R.B. 252, 252 (2015).[3]  Because the Board found that Ampersand engaged

---

[3] The Board initially adopted the ALJ's findings in a 2012 order. *Ampersand I*, 358 N.L.R.B. at 1415.  That order was invalidated by the Supreme Court's decision in *NLRB v. Noel Canning*, 573 U.S. 513 (2014), because two members who served on the panel were improperly

in unusually aggravated misconduct sufficient to warrant more than a traditional remedy, it ordered Ampersand to reimburse the Union for the costs and expenses the Union incurred during the collective bargaining sessions. *See Ampersand I*, 358 N.L.R.B. at 1417; *Ampersand II*, 362 N.L.R.B. at 252–53 (ordering reimbursement and incorporating the reasoning of *Ampersand I*). On appeal, the D.C. Circuit upheld the Board's findings and enforced its order in full. *See Ampersand Publ'g, LLC v. NLRB*, No. 15-1074, 2017 WL 1314946, at *4 (D.C. Cir. Mar. 3, 2017) (per curiam).

The parties could not reach an agreement on the total amount Ampersand should be required to pay in remedies, including the amount of reimbursement due to the Union. In July 2018, the Regional Director for NLRB Region 27 issued a compliance specification detailing her calculations of how much Ampersand owed and setting a compliance hearing before an ALJ.[4]    After Ampersand responded to the specification, the General Counsel filed a motion for partial summary judgment, alleging that Ampersand's answer was insufficiently specific under the NLRB's rules and sought to relitigate matters already decided in the underlying case. The Board granted the motion. It remanded to the ALJ to decide the two remaining issues: the costs and expenses incurred by the Union during bargaining and the net backpay due to Moran and Mineards. After a hearing, the ALJ

---

appointed to the Board. A properly constituted panel of the Board reconsidered the previous order and readopted it in full. *Ampersand II*, 362 N.L.R.B. at 252.

[4] This case was transferred from Region 31 to Region 27 in 2017. Therefore, the Regional Director of Region 31 issued the complaint, while the Regional Director of Region 27 issued the compliance specification.

granted the full amount claimed in an amended specification. Ampersand filed exceptions to this decision, and a three-member panel of the Board affirmed. The NLRB subsequently applied to this court for enforcement of its compliance order.

## STANDARD OF REVIEW

We have jurisdiction under 29 U.S.C. § 160(e). The NLRB's discretion in selecting remedies is "exceedingly broad," and we will enforce a remedy "unless it represents a clear abuse of discretion." *NLRB v. C.E. Wylie Constr. Co.*, 934 F.2d 234, 236 (9th Cir. 1991) (internal quotation marks and citation omitted). "Such an abuse of discretion is present if it is shown that the order is a patent attempt to achieve ends other than those that can be fairly said to effectuate the policies of the Act." *Id.* (internal quotation marks and citation omitted). "The function of the remedy in unfair labor cases is to restore the situation, as nearly as possible, to that which would have occurred but for the violation." *Kallmann v. NLRB*, 640 F.2d 1094, 1103 (9th Cir. 1981). We resolve any doubts about the remedy "against the perpetrator of the unfair labor practice." *Sever v. NLRB*, 231 F.3d 1156, 1165 (9th Cir. 2000).

## DISCUSSION

The Union incurred legal fees for consultations with its outside counsel, the Bush Gottlieb law firm ("Bush Gottlieb"), during contract negotiations. The Regional Director included those fees in the compliance order as part of the bargaining expenses for which Ampersand was required to reimburse the Union. Ampersand objects, arguing that D.C. Circuit precedent has established that the NLRB lacks the power to order the reimbursement of legal fees.

Ampersand misreads the D.C. Circuit's opinions.  It is true that the cases Ampersand cites did reject portions of NLRB orders that awarded attorney's fees to unions, holding that the Board lacked either statutory or inherent authority to shift these costs to an employer.  *See Camelot Terrace, Inc. v. NLRB*, 824 F.3d 1085, 1089–90 (D.C. Cir. 2016); *HTH Corp. v. NLRB*, 823 F.3d 668, 678–81 (D.C. Cir. 2016).  These holdings, however, were specifically limited to the context of litigation, and they do not bar the award at issue here.  *See Camelot Terrace*, 824 F.3d at 1094.

In *HTH Corp.*, the NLRB determined that HTH Corporation, which operated a hotel in Honolulu, had committed "severe and pervasive unfair labor practices" in its dealing with the International Longshore and Warehouse Union, Local 142.  823 F.3d at 671.  The Board imposed a number of "extraordinary remedies" on the company, including awarding litigation expenses to the General Counsel and the union.  *Id*. at 672.  HTH challenged this remedy, arguing that it exceeded the NLRB's power under the NLRA.  *See id*. at 674.  Although it acknowledged that, under D.C. Circuit law, it lacked statutory authority to seek recovery of litigation costs, the Board argued that its remedy was justified by its "inherent authority to control and maintain the integrity of its own proceedings through an application of the bad-faith exception to the American Rule."[5]  *Id*. at 678–79.  The D.C. Circuit rejected the Board's argument, noting that the NLRB is a "creature of statute" and

---

[5] The American Rule "generally requires each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses."  *Fox v. Vice*, 563 U.S. 826, 832 (2011).   The bad-faith exception to the American Rule permits a court to award attorney's fees to the prevailing party when the losing party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Hall v. Cole*, 412 U.S. 1, 5 (1973) (citation omitted).

"has only those powers conferred upon it by Congress." *Id*. Because no provision of the Act "explicitly or implicitly" grants the NLRB the power to apply the bad-faith exception, the D.C. Circuit held that the Board did not have the authority to order reimbursement of litigation costs. *Id*.

A few months later, the D.C. Circuit decided *Camelot Terrace*. In that case, the NLRB determined that Camelot Terrace and Galesburg Terrace, two nursing home operators, had violated the NLRA by engaging in bad-faith bargaining with the Service Employees International Union. *See Camelot Terrace*, 824 F.3d at 1087. Among other remedies, the Board required that the companies reimburse the "litigation costs incurred by both the Board and the Union during Board proceedings" as well as "all of the negotiation expenses the Union incurred during its bargaining sessions with the Companies." *Id*. (internal quotation marks omitted). The companies objected that the Board lacked the authority to impose either remedy. *See id*. Reiterating its holding in *HTH Corp*., the D.C. Circuit held that the NLRB did not have the power to require the reimbursement of litigation costs. *See id*. at 1089–90. It upheld the NLRB's award of negotiation expenses, however, emphasizing that "litigation costs" and "bargaining expenses" are distinct categories. *Id*. at 1087. The court explained that litigation expenses were punitive in nature and thus beyond the Board's remedial power under section 10(c) of the NLRA. *Id*. at 1089–90. However, it held that an award of bargaining expenses is a primarily compensatory remedy, designed to restore "the economic status quo that would have obtained but for the Companies' wrongful acts," and thus falls within the Board's section 10(c) power. *Id*. at 1094–95 (internal brackets and citation omitted).

These cases establish that the NLRB lacks the power to award attorney's fees that are incurred as a *litigation* expense, not that it lacks the power to ever require the reimbursement of such fees. The NLRA grants the Board "broad discretion to impose remedies for unfair labor practices." *Cal. Pac. Med. Ctr. v. NLRB*, 87 F.3d 304, 311 (9th Cir. 1996). The Board may take any "affirmative action" that "will effectuate the policies" of the Act. 29 U.S.C. § 160(c); *see also Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 539–40 (1943). The award of legal fees in this case is exactly the sort of remedy that courts have upheld as within the Board's statutory remedial authority. Prior adjudications have established that Ampersand committed an unfair labor practice by refusing to bargain with the Union in good faith. This remedy is directly targeted at Ampersand's violation, compensating the Union for "the resources that were wasted because of the [company's] unlawful conduct" and "restor[ing] the economic strength that is necessary to ensure a return to the status quo ante at the bargaining table." *Camelot Terrace*, 824 F.3d at 1093 (internal quotation marks and citation omitted). Imposing such remedies, designed to "respond[] directly to an unfair labor practice," falls squarely within the heartland of the NLRB's delegated powers.[6] *Unbelievable, Inc.*, 118 F.3d at 805.

---

[6] Indeed, the D.C. Circuit has held that it is even within the NLRB's remedial power to "award a Union the costs and fees it incurs in defending against an employer's baseless, retaliatory lawsuit . . . if it determines that the filing or maintenance of the lawsuit was an unfair labor practice." *Gibson Greetings, Inc. v. NLRB*, 53 F.3d 385, 394 (D.C. Cir. 1995); *see also Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 747 (1983) ("If a violation is found, the Board may order the employer to reimburse the employees whom he had wrongfully sued for their attorneys' fees and other expenses.").

Notably, the NLRB's compliance order included only those legal fees incurred during collective bargaining. Although Bush Gottlieb also represented the Union in litigation before the NLRB, the portion of the firm's activities relevant here related exclusively to the bargaining process.    Indeed, attorney Ira L. Gottlieb ("Gottlieb") personally participated in bargaining sessions and testified that he advised the bargaining committee during negotiations.  The amount the Union spent on legal fees for bargaining and litigation could be separately calculated because the firm assigned the tasks different matter numbers. The calculations in the specification were based only on expenses listed under the matter number for bargaining activities, and Gottlieb carefully excluded any expense that was unclear or questionable.  While the underlying order broadly directs Ampersand to "[r]eimburse the Union for its costs and expenses incurred in collective bargaining," *Ampersand*, 362 N.L.R.B. at 253, neither it nor the compliance order includes litigation expenses or goes beyond what is necessary to put the Union in the position it was in before the contract negotiations.

Nonetheless, Ampersand argues that the cost of Bush Gottlieb's services should be considered a litigation expense, not a bargaining expense, because the parties were involved in ongoing adjudications before the NLRB during the same period in which bargaining took place.[7]   This misconstrues the nature of both bargaining and the NLRB's adjudicatory process.    Although there were NLRB

---

[7] Bargaining sessions occurred between November 2007 and April 2009.  At the same time, Ampersand and the Union were engaged in ongoing litigation before the NLRB and the courts over actions taken by Ampersand during the union organizing campaign.  *See Ampersand Pub., LLC v. NLRB*, 702 F.3d 51, 55 (D.C. Cir. 2012).

complaints pending against Ampersand while it negotiated with the Union over the terms and conditions of employment—and, in fact, more charges were filed during negotiations—the bargaining itself, as noted above, was independent from the NLRB adjudications. The pending NLRB complaints were prosecuted by the General Counsel, not by the Union. *See* 29 U.S.C. § 153(d); 29 C.F.R. § 101.10(a). The bargaining process, meanwhile, involved only Ampersand and the Union, with no active participation by NLRB officials. The NLRB adjudication dealt with allegations that Ampersand had engaged in unfair labor practices; the bargaining process focused on Union members' conditions of employment. Although Gottlieb was involved in both activities on behalf of the Union, he testified that the work he did for each project was separate and distinct. We see no reason to believe that the mere fact that these activities occurred simultaneously would alter the fundamental fact that bargaining is a "private contractual negotiation[]," not a part of litigation. *Camelot Terrace*, 824 F.3d at 1094. Nor does the fact that Gottlieb is a lawyer who at times represented the Union in litigation before the NLRB mean that his fees must automatically be considered litigation expenses, without any consideration of the actual work he was paid to perform. We therefore hold that the NLRB did not abuse its discretion in ordering Ampersand to reimburse the Union for the legal fees it incurred as part of the bargaining process.

**PETITION FOR ENFORCEMENT GRANTED.**